IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>DIANN BADALI and RENATA ANN BADALI aka RENATA ANN DEVERAUX,<br><br>    Defendants. | **ORDER AND MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT AND DIANN BADALI'S CROSSCLAIM**<br><br>Civil No. 1:22-cv-00158-TC-JCB<br><br>Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

Plaintiff Metropolitan Life Insurance Company (MetLife) brought this interpleader[1] action on November 15, 2022. (See Compl., ECF No. 2.) Unable to decide the proper payee of life insurance benefits under a life insurance plan that MetLife issued to Delta Air Lines, MetLife sought the court's determination. (See id. ¶ 1.) The life insurance plan at issue is the "Delta Pilots Disability and Survivorship Trust" (the Plan) (ECF No. 38-4). Decedent Boyd Badali participated in and was enrolled in the Plan at the time of his death in February 2022. (ECF No. 2 at ¶¶ 13–15, 17; Death Certificate, ECF No. 2-2.) Shortly after he died, MetLife received

---

[1] The Federal Rules of Civil Procedure and federal law permit interpleader actions. MetLife filed this case as a rule interpleader and a statutory interpleader suit. (See Compl., ECF No. 2 at ¶¶ 9–11 (explaining basis for court's jurisdiction over this interpleader action)); see also One Gas, Inc. v. J.P. Pipeline Constr. Inc., No. 18-2061, 2018 WL 4222411, at *1 (D. Kan. July 18, 2018) ("A stakeholder may pursue two types of interpleader actions: (1) a 'rule interpleader' under Rule 22, Fed. R. Civ. P., and (2) a 'statutory interpleader' under 28 U.S.C. §§ 1335, 1397, and 2361.").

1

claims for benefits under the Plan from Diann Badali, Mr. Badali's former wife, and Renata Badali, Mr. Badali's wife at the time of his death.[2] (ECF No. 2 at ¶¶ 18, 20.) MetLife's interpleader complaint not only named claimants Diann and Renata as Defendants, but also Mr. Badali's children—Ashley, Rachel, and Sabrina (together, the Badali children)—and George Graff, in his capacity as Special Administrator of Mr. Badali's estate.[3] (See id. at 1.)

Before the court are Diann's and Renata's motions for summary judgment. (Diann Mot. Summ. J., ECF No. 58; Renata Mot. Summ. J., ECF No. 38.) Each claimant contends that she is entitled to the Plan proceeds. But because the Employee Retirement Income Security Act of 1974 (ERISA)[4] governs the Plan, determining the proper payee is relatively simple. For the reasons explained below, the court GRANTS Renata's motion and DENIES Diann's.

## BACKGROUND

Diann and Mr. Badali married in 1988 and divorced in 2019. (Decl. Diann Badali, ECF No. 44-1 at ¶¶ 1–2.) The former couple hired an attorney, Adam Hensley, to facilitate their divorce. (Id. ¶ 3.) A divorce decree was entered in August 2019. (See id.) The decree did not mention the Plan proceeds. (See Decree of Divorce, ECF No. 38-1.) Diann asserts that the decree contained numerous errors and that Mr. Hensley acted improperly in facilitating the decree. (ECF No. 44-1 at ¶ 3.) Mr. Hensley amended the decree in October 2019, yet Diann

---

[2] The court will refer to Diann Badali and Renata Badali by their first names to avoid confusion.
[3] The court has since terminated MetLife, the Badali children, and George Graff from the case. The court terminated MetLife once MetLife presented the court with proof that it deposited the benefits at issue into the Registry of the Clerk of the Court. (See Order Granting Mot. Order of Interpleader, ECF No. 25 at 6 (dismissing MetLife from case).) The Badali children and George Graff disclaimed interest in the life insurance proceeds. (See id. at 3 ("[T]he Badali daughters disclaim any and all rights to the Life Insurance Benefits in the matter"); Graff Mot. Dismiss, ECF No. 37 at 3 (disclaiming "any right as a potential … beneficiary under the [life insurance plan] at issue").)
[4] 29 U.S.C. §§ 1001–1461.

ultimately brought a malpractice lawsuit against him. (See Amended Decree of Divorce, ECF No. 44-4; ECF No. 44-1 at ¶ 3; see also Am. Compl., ECF No. 44-5 (listing Diann as plaintiff and Mr. Hensley as defendant).) Diann alleges that "[b]ecause of malpractice by [Mr.] Hensley, [she] was denied … retirement benefits." (ECF No. 44-1 at ¶ 4.) The retirement benefits instead went to Renata, despite only being married to Mr. Badali for 15 months. (Id.)

Before Mr. Badali died, but after the original divorce decree went into effect, Mr. Badali decided to retire—a deviation from the terms the divorce decree laid out. (Id. ¶ 7.) This motivated Diann and Mr. Badali to enter into an additional, notarized agreement. (Id. ¶¶ 7–8.) Both parties signed the agreement on August 5, 2020, which stated that the agreement "update[d] and clarifie[d] the original decree and its amendments." (Id.; Notarized Agreement Clarifying Decree, ECF No. 44-2 at 2.) The agreement adjusted a few designations in the decree and its amendments and provided that "[Mr. Badali] will keep Diann as beneficiary on the Delta provided life insurance policy." (Id. ¶ 7.) Mr. Badali died in February 2022. (See ECF No. 2-2 (showing date of death).)

Renata moved for summary judgment first. (ECF No. 38.) Renata maintains that because MetLife has no record of Mr. Badali designating a beneficiary for the Plan, she is entitled to the proceeds. (Id. at 2; see ECF No. 2 at ¶ 21.) And because the Plan is governed by ERISA, the Plan must be administered according to its plain text,[5] which indicates that "[i]f there is no Beneficiary designated … [MetLife] will determine the Beneficiary according to the following order: [surviving spouse; children; parents; estate]." (ECF No. 38-4 at 38.)

---

[5] See 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan … in accordance with the documents and instruments governing the plan[.]"); see also Heimeshoff v. Hartford Life Ins. Co., 571 U.S. 99, 108 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan.").

3

In response to Renata's motion, Diann filed a motion under Federal Rule of Civil Procedure 56(d).  (Rule 56(d) Mot., ECF No. 46); see Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that … it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").  Diann asserted that additional time for discovery was necessary to respond to Renata's motion.  (See ECF No. 46 at 2.)  She specifically sought facts concerning whether MetLife had documentation of any Plan beneficiary.  (Id.)  The court granted Diann's motion for Rule 56(d) relief, giving her an extra month to engage in discovery.  (Order on Rule 56(d) Mot., ECF No. 50.)  Diann used the additional time to obtain a declaration from Megan Vaccaro, a MetLife representative.[6]

Three weeks after the deadline to file dispositive motions passed, Diann filed a motion for summary judgment.  (See ECF No. 58.)  In her motion, she repeats the arguments that she made in response to Renata's motion, including that "the rules governing the present issue lie in equity."  (Id. at 2.)  Diann would like "the court [to] give homage to the unjust enrichment/constructive trust equitable remedies of the potential claims of the parties and simply award the proceeds to Diann."  (Id. at 16.)  Recognizing the overlap between her motion and her response to Renata's motion, Diann informed the court that she only filed her motion because she believed that "the [c]ourt may have found it difficult to release the funds to Diann absent a formal motion by her seeking such relief."  (Diann's Reply, ECF No. 62 at 3.)

---

[6] Ms. Vaccaro's declaration does not establish her relationship to MetLife, though Diann refers to her as MetLife's appointed representative.  (See Decl. Megan Vaccaro, ECF No. 55-1; Resp. in Opp'n to Renata's Mot. for Summ. J., ECF No. 55 at 2.)

4

**LEGAL STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that might affect the outcome of the case.  See Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015).

Once the movant shows there is an absence of a genuine dispute of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  "[W]hile [courts] draw all reasonable inferences in favor of the non-moving party, 'an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'" GeoMetWatch Corp. v. Behunin, 38 F.4th 1183, 1200 (10th Cir. 2022) (quoting Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A., 858 F.3d 1324, 1334 (10th Cir. 2017)).

"The standard for cross-motions for summary judgments is the same as for individual motions for summary judgment." Cannon v. State Farm Mut. Auto. Ins. Co., No. 2:13-cv-186, 2013 WL 5563303, at *1 (D. Utah Oct. 7, 2013) (citation omitted).  "[The court] must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." Boyz Sanitation Serv., Inc. v. City of Rawlins, 889 F.3d 1189, 1195 (10th Cir. 2018).

5

# ANALYSIS

## I.     Diann's Late Motion for Summary Judgment

As mentioned above, Diann filed her motion for summary judgment three weeks after the deadline to file dispositive motions passed.  (See Scheduling Order, ECF No. 36 at 3 (setting October 27, 2023, as the deadline to file dispositive motions).)  Renata argues that the court should deny Diann's motion on this basis alone.

Federal Rule of Civil Procedure 16 provides that scheduling orders "may be modified only for good cause and with the judge's consent."  Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing Fed. R. Civ. P. 16(b)(4)).  "[T]his standard requires the movant to show the scheduling deadlines cannot be met despite the movant's best efforts." Id. (cleaned up).

Diann did not seek an extension of the dispositive motions deadline or leave from the court to file her untimely motion.  But the night before the hearing on the motions for summary judgment, Diann filed a motion to amend the scheduling order in this case.  (See Mot. Amend Scheduling Order, ECF No. 63.)  Because the court's preference is to resolve cases on the merits, the court grants in part the motion to amend the scheduling order and will consider Diann's motion.

## II.    Applying ERISA to the Plan

"[T]he Delta Pilots Disability and Survivorship Plan … [l]ike virtually all employee benefit plans … is regulated by [ERISA]."  Air Line Pilots Ass'n, Int'l v. Delta Air Lines, Inc., 863 F.2d 87, 89 (D.C. Cir. 1988); see also Brooks v. Metro. Life Ins. Co., No. 3:17cv676, 2018 WL 6839058, at *1 (N.D. Fl. 2018) (referring to the Delta Pilots Disability and Survivorship Plan as an ERISA plan).  Congress passed ERISA to "establish minimum standards for such

6

plans." Air Line Pilots Ass'n Int'l, 863 F.2d at 89.  While employers have discretion to design benefits plans as they see fit, "once a plan is established, the [plan] administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'"  Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 108 (2013) (citing 29 U.S.C. § 1102(a)(1)).  Accordingly, ERISA's focus is on the written terms of the applicable plan.

The relevant Plan language is:

**Beneficiary**

You may designate a Beneficiary in Your application or enrollment form.  You may change Your Beneficiary at any time.  To do so, You must send a Signed and dated, Written request to the Policyholder using a form satisfactory to Us … You do not need the Beneficiary's consent to make a change … If two or more Beneficiaries are designated and their shares are not specified, they will share the insurance equally.  If there is no Beneficiary designated or no surviving Beneficiary at Your death, We will determine the Beneficiary according to the following order:

1. Your Spouse or Domestic Partner, if alive;
2. Your child(ren), if there is no surviving Spouse or Domestic Partner;
3. Your parent(s), if there is no surviving child; or
4. Your estate, if there is no surviving parent.

(ECF No. 38-4 at 38.)

Taking the relevant language into account, the dispositive question for the court is whether Mr. Badali had designated a Plan beneficiary who was in effect at the time of his death.  The Plan dictates that the beneficiary is the proper payee.  But if there was no designated beneficiary at the time of his death, Renata is the proper payee under the Plan's plain language.

Renata contends that Mr. Badali never named a beneficiary.  To support this argument, she cites MetLife's interpleader complaint, (ECF No. 38 at 8), which stated that MetLife does not have any beneficiary designation forms from Mr. Badali.  (ECF No. 2 at ¶ 21.)  Renata also cites the benefit elections record she obtained from Delta, and she maintains that this indicates that

7

there was no designated Plan beneficiary at the time of Mr. Badali's death or for any year from 2019 to 2021. (ECF No. 38 at 8; Benefit Elections Record, ECF No. 38-5 at 4–8.)

While it is unclear to the court whether a beneficiary designation, if made, would appear in the benefit elections record,[7] Renata's other evidence is strong enough to satisfy her burden at summary judgment. Notably, the Plan's handbook reveals that any beneficiary designation is made through MetLife: "[Metlife's] Online Beneficiary Management tool is the preferred method to designate or change your Beneficiary. However, you may also designate (or change) a Beneficiary by completing a Beneficiary Designation form … [and] return it to MetLife." (Plan Handbook, ECF No. 38-6 at 20.) If a Plan participant "decide[s] to [change or designate a beneficiary, they] can visit MetLife's Beneficiary Management site at www.metlife.com/MyBenefits to add, change or delete a Beneficiary online." (Id. at 21.) If Mr. Badali designated a beneficiary or changed a designated beneficiary at any point, MetLife itself would have a record.

The evidence Diann brings forward to rebut Renata's motion and satisfy her own summary judgment burden is limited. First, Diann points to the agreement between Mr. Badali and herself correcting and clarifying the divorce decree and its amendments. (See ECF No. 44-2 at 2.) Diann seizes on the last line of this document, which reads: "[Mr. Badali] will keep Diann as beneficiary on the Delta provided life insurance policy." (Id.) Renata previously did not contest the authenticity of this document, (Renata Badali Dep. Tr., ECF No. 58-3 at 17:22–25), but her counsel expressed skepticism of the agreement's binding nature at the hearing on the

---

[7] The court does note that the benefit elections record reveals beneficiaries for other benefits that Mr. Badali received through Delta. (See ECF No. 38-5 at 4, 7 (listing Mr. Badali, Diann, and two of the Badali children as "who's covered" for Mr. Badali's dental insurance effective January 1, 2019, and Mr. Badali, Renata, and the same two Badali children as "who's covered" for Mr. Badali's dental insurance effective January 1, 2021).)

motions.  In any event, Diann presents no other evidence that Mr. Badali named Diann as Plan beneficiary at any point.  Even if she were designated the Plan beneficiary at some point before Mr. Badali died, such as in 2020 (when the agreement went into effect), that is immaterial.  Rather, whomever was named a Plan beneficiary at the time of Mr. Badali's death in February 2022 is material.

Second, Diann relies on a declaration from Megan Vaccaro.  The declaration states that "MetLife is only a partial recordkeeper for Delta and does not handle complete recordkeeping.  A third-party administrator for Delta Airlines, Conduent, handles the eligibility/coverage information for employees for Delta."  (ECF No. 55-1 at ¶¶ 3–4.)  Diann argues that this information demonstrates that MetLife "does not know whether there was a prior designation by [Mr. Badali] or not as MetLife does not have any of the original enrollment forms and does not even conduct the original enrollment."  (ECF No. 55 at 3.)  Diann's counsel stated at the hearing that Diann was unable to contact Conduent to inquire about its recordkeeping for MetLife and Delta because of time constraints.

There are several problems with the Vaccaro declaration.  In addition to lacking foundation for Ms. Vaccaro's ability to testify on behalf of MetLife, neither Ms. Vaccaro nor Diann elaborate on what constitutes "eligibility/coverage information" or what it means that Conduent, a third party, handles that material.  Additionally, neither Ms. Vaccaro nor Diann elaborate on what is an "original enrollment document[]."  It is not clear to the court that a beneficiary designation would qualify as an "original enrollment document," as beneficiary designations are made through MetLife's Online Beneficiary Management Tool.  (See ECF No. 38-6 at 20–21 (explaining beneficiary designation procedures).)

9

This evidence, considered together, is insufficient to rebut Renata's summary judgment motion. "[W]hile [courts] draw all reasonable inferences in favor of the non-moving party [at summary judgment], an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility." GeoMetWatch Corp., 38 F.4th at 1200 (citation omitted). Inferring that Diann was the relevant Plan beneficiary based on the limited evidence Diann puts forward would be speculative and improper. The evidence Diann presents fails to raise a genuine issue of material fact because no reasonable jury could find that Mr. Badali had designated her as the Plan beneficiary at the time of his death on the record before the court.

### III.   Diann's Arguments that Equity Supports Awarding Her the Plan Proceeds

Acknowledging that ERISA applies, Diann nonetheless argues that "the rules governing the present issue lie in equity." (ECF No. 58 at 2.)[8] At the hearing on the motions, Diann's counsel argued that granting Diann's motion for summary judgment on equity grounds would give credence to both what Mr. Badali wanted and what he contracted to do with Diann in their corrected divorce decree.

Diann points to three Utah cases for support. In Travelers Ins. Co. v. Lewis, 531 P.2d 484, 485 (Utah 1975), William E. Lavender took out an insurance policy and named his first wife as beneficiary. Id. A provision in their divorce decree stated that the defendant was required to maintain the life insurance policy with his first wife as beneficiary and their three children as

---

[8] There is some discussion in Diann's briefs about preemption. But no preemption issue is presented here. ERISA's preemption statute, 29 U.S.C. § 1144(a), provides that ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" Unlike in Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 144 (2001), there is no state law at issue here. Diann has further failed to present any plausible state law cause of action that might be preempted.

contingent beneficiaries if the plaintiff remarried or died. Id. Both parties remarried, and Mr. Lavender designated his second wife as policy beneficiary. Id. The court found that Mr. Lavender improperly designated his second wife as beneficiary of the policy, in violation of the divorce decree, and the children were entitled to the proceeds of the policy because Mr. Lavender's first wife remarried. Id. at 486.

In Nielsen v. Nielsen, Mr. and Mrs. Nielsen were married and had children. 535 P.2d 1239, 1240 (Utah 1975). The couple divorced, and one of the provisions of their divorce decree required Mr. Nielsen to maintain his group insurance policy through Kennecott Corporation with Mrs. Nielsen and the children as the policy's beneficiaries. Id. At the time of Mr. Nielsen's death, he was insured under a different group policy in addition to being remarried. Id. The court had to determine whether the divorced wife and children of Mr. Nielsen, or Mr. Nielsen's wife at the time of his death, were entitled to benefits under the second group policy. The court held that Mr. Nielsen's first wife and children were entitled only to recover under the first policy, which was specified in the divorce decree. Id.

Finally, in Welty v. Retirement Board, Diane Welty and Jesse Lopez married and had children before divorcing in 1997. 392 P.3d 893, 894 (Utah Ct. App. 2017). Mr. Lopez had a life insurance policy through his employer. Id. The couple's divorce decree ordered Mr. Lopez to maintain the policy until the later of when his children reached age 18 or alimony terminated and "to irrevocably designate [Welty] … beneficiary on said life insurance policy." Id. In 2006, Mr. Lopez filed a beneficiary change form that revoked previous life insurance beneficiary designations and made Ms. Lopez the primary beneficiary. Id. at 895. After Mr. Lopez died, Ms. Lopez filed a claim for the proceeds and received them from the Public Employees' Health Program Life Program (PEHP). Id. at 895. Ms. Welty and the children argued that "[PEHP]

breached its contractual duties … by paying" Ms. Lopez.  Id. at 895–96.  Ultimately, the court held that the divorce decree was a contract between Mr. Lopez and Ms. Welty, and, accordingly, PEHP could not have breached the contract.  Id. at 897–98 (rejecting Ms. Welty and the children's equity arguments).

None of these cases dictate finding that Diann is the proper beneficiary in this case.  Most importantly, none of the plans in these cases are governed by ERISA, which does not allow the court to consider equitable arguments when a plan's language is clear.  Moreover, in each case Diann cites, a provision of the divorce decree—ordered by the court—directs an insured either to designate a specific beneficiary or to maintain a policy with a known beneficiary.  See Travelers Ins. Co., 531 P.2d at 485 ("[Mr. Lavender's] wife subsequently secured a decree of divorce containing the following language: 6. The defendant is hereby ordered to maintain in full force and effect the $5,000.00 life insurance policy on the life of the defendant with the plaintiff as beneficiary and the three minor children of the parties as contingent beneficiaries …."); see Nielson, 535 P.2d at 1240 ("One of the provisions of the decree of divorce was that 'the defendant (Robert C. Nielsen) must keep in full force and effect the $5,000 group insurance policy at Kennecott Corporation with the beneficiaries thereon being the plaintiff herein and the minor children.'"); see also Welty, 392 P.3d at 894 (stating that divorce decree ordered Mr. Lopez to designate Ms. Welty as beneficiary of his life insurance policy).

Here, Mr. Badali's representation that he would maintain Diann as beneficiary is not a provision of the divorce decree ordered by the court, but a private agreement signed and notarized by Diann and Mr. Badali.  Mr. Badali either breached this agreement by removing Diann as beneficiary or he was mistaken in his belief that he had ever designated her in the first place.  (See ECF No. 2 at ¶ 21 ("MetLife does not have a beneficiary designation form executed

by Decedent.").) As a result, Diann has not presented sufficient evidence to raise a genuine issue of fact that Mr. Badali had named her as Plan beneficiary at the time of his death.

To the extent that Mr. Badali breached his agreement with Diann or made a misrepresentation in that agreement, Diann may have a claim against Mr. Badali's estate in state court. See Welty, 392 P.3d at 897–98 (finding that because the divorce decree was a contract between Ms. Welty and Mr. Lopez, no other party could have breached). But Diann's argument that the court should right Mr. Badali's wrong by awarding her the proceeds is misplaced.

Diann also makes a claim for unjust enrichment in her motion for summary judgment. (See ECF No. 58 at 14–16.) Notably, Diann concedes in her reply that the elements of this claim are not met. (ECF No. 62 at 5.) The court agrees that this claim fails because it is not Diann who has conferred a benefit on Renata.[9] Diann's additional argument about the unjustness of not receiving the retirement benefits due to Mr. Hensley's mistakes, (see ECF No. 58 at 5 (stating that because of malpractice, Renata is getting "around $4,000" in retirement benefits)), is unavailing because the retirement benefits are not at issue in this action.

Relatedly, Diann filed an unjust enrichment crossclaim against Renata the night before the hearing on the motions for summary judgment. (See Crossclaim, ECF No. 64.) In her motion to amend the scheduling order, Diann contends that "the Scheduling Order fails to address any potential crossclaim issues or deadlines." (ECF No. 63 at 4.) But she also asserts that she has "shown that the Scheduling Order needs to be amended in order to … address any

---

[9] Unjust enrichment requires three elements to be met before it can serve as the basis for recovery. Concrete Products Co., a Div. of Gibbons & Reed v. Salt Lake Cnty., 734 P.2d 910, 911 (Utah 1987). These are: "(1) a benefit conferred on one person by another; (2) an appreciation or a knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." Id.

potential crossclaim issues." (Id.)[10]  Diann's first contention is incorrect, as the scheduling order required all motions to amend pleadings to be filed by July 28, 2023.  (See ECF No. 36 at 3.)  Furthermore, Diann did not seek the court's permission to file her crossclaim after the amended pleading deadline.  Though the court acknowledges the unique interpleader posture of this case, Diann could have filed a motion to amend her answer, filed January 18, 2023, after the court entered its order granting MetLife's partially stipulated motion for interpleader and requiring the parties to present their claims in this case.  (See ECF No. 25 at 6 ("All parties with an interest in the matter are ORDERED to appear and present their claims.").)  Finally, it would be futile to grant Diann leave to amend because, as discussed above, she cannot demonstrate the elements of an unjust enrichment claim against Renata as that claim pertains to the life insurance proceeds.[11]  For these reasons, the court denies Diann's request to amend the scheduling order as it concerns her crossclaim.

For the reasons stated above, the court is not persuaded that equity concerns support granting Diann's motion.  ERISA governs the Plan at issue, which dictates that if Mr. Badali did not designate a Plan beneficiary, MetLife will distribute the Plan proceeds to his surviving spouse—Renata.  The court does not find that Diann raised a genuine issue of material fact about whether Mr. Badali had designated her as the Plan beneficiary in effect at the time of his death.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

---

[10] The court construes this as a request to amend the scheduling order as it concerns Diann's crossclaim.

[11] As discussed at the hearing on the motions, there may be another court—probate, for example—that is better suited to hear any claims about unjust enrichment.

      1.      The court GRANTS Diann Badali's motion to amend the scheduling order (ECF No. 63) as it relates to her motion for summary judgment, but DENIES the motion (ECF No. 63) to the extent it concerns her crossclaim,

      2.      The court GRANTS Renata Badali's motion for summary judgment (ECF No. 38),

      3.      The court DENIES Diann Badali's motion for summary judgment (ECF No. 58), and

      4.      The Registrar of the Court is directed to release the funds that Plaintiff Metropolitan Life Insurance Company previously interpleaded to this court to Defendant Renata Badali c/o Christiansen Law PLLC.

DATED this 5th day of February, 2024.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge